IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

JEANNETTE L. BESS,                        )
    Plaintiff,                          )
                                        )
v.                                        )        Civil Action No. 5:13-cv-00108
                                        )
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )        By:    Joel C. Hoppe
    Defendant.                          )               United States Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Jeannette L. Bess seeks review of the Commissioner of Social Security's

("Commissioner") final decision denying her application for disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g), and this case is before the undersigned magistrate

judge by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 6. After considering the

administrative record, the parties' briefs, and the applicable law, I find that remand for

consideration of new evidence is appropriate. Therefore, I recommend that the Court remand this

case to the Commissioner under sentence six of 42 U.S.C. § 405(g).

### I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final

determination that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v.*

*Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not

"reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for

that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court

asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and

1

whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. § 404.1520(a)(4); *Heckler v. Campbell*,

2

461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Bess was born on September 5, 1961, Administrative Record ("R.") 265, and at the time of the ALJ's decision was "closely approaching advanced age" under 20 C.F.R. § 404.1563(d). She completed high school and has work experience as a cashier, hostess, and laundry attendant. R. 316. Bess protectively filed for DIB on November 8, 2010. R. 265–66. She alleged a disability onset date of December 3, 2009, R. 265, amended to September 20, 2010, at her administrative hearing on January 10, 2012, R. 38; *see also* R. 59. She alleged disability based on the following conditions: deteriorating cervical discs, upper and lower back problems, high cholesterol and blood pressure, low thyroid, spinal stenosis, and erratic heartbeat. R. 315.

The Commissioner rejected Bess's application initially and on reconsideration. R. 18. On January 10, 2012, the ALJ held an administrative hearing at which Bess was represented by counsel. R. 32–53. In an opinion dated February 17, 2012, the ALJ found that Bess was not disabled under the Act. R. 108–16. Bess requested review of the ALJ's decision by the Appeals Council, which granted her request. R. 121–25. By an order dated April 11, 2013, the Appeals Council remanded her case to the ALJ for further evaluation of the effects of Bess's obesity, her advancement into the "closely approaching advanced age" category, and additional evidence submitted to the Appeals Council. R. 122–24. The ALJ held a second administrative hearing on August 21, 2013. R. 54–83. Bess was represented by counsel, and the ALJ heard testimony from a medical expert and a vocational expert ("VE"). *Id.*

3

In an opinion dated August 30, 2013, the ALJ found that Bess had severe impairments of cervical and lumbar degenerative disc disease and obesity. R. 14–15. The ALJ determined that none of these impairments met or equaled the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. 15–16. The ALJ found that Bess had the residual functional capacity ("RFC") to perform light work,[1] except that she can only occasionally perform postural activities, like balancing and stooping, and she must be able to alternate between sitting and standing at will. R. 16. Based upon this RFC, the ALJ found that Bess was unable to perform any of her past occupations, as they did not allow her the option to sit or stand at will. R. 21. Relying on the VE's testimony, the ALJ concluded that jobs exist in significant numbers in the national and local economy that Bess can perform. R. 21–22. Accordingly, the ALJ determined that Bess was not disabled under the Act. R. 22. The Appeals Council denied Bess's request for review, R. 1–4, and this appeal followed.

## III. Discussion

Bess's appeal primarily concerns a degenerative spinal condition. The ALJ found in his second opinion that Bess suffered from the severe impairments of "cervical and lumbar degenerative disc disease and obesity." R. 14. Bess has had three surgeries to address her back issues: a cervical diskectomy, decompression, and fusion on October 13, 2010, R. 562–65; a cervical foraminotomy on September 14, 2011, R. 839–47; and a lumbar facetoctomy and foraminotomy on September 27, 2012, R. 1023–24.

---

[1] "RFC" is an applicant's maximum ability to work "on a regular and continuing basis" despite his or her impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record and must reflect the "total limiting effects" of the applicant's impairments. 20 C.F.R. § 404.1545. "Light work" involves "lifting no more than 20 pounds at a time," but "frequently" lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Work in this category often requires "a good deal of standing or walking." *Id.* A person who can perform light work generally can also perform "sedentary work." *Id.*

4

On appeal, Bess argues that the ALJ erred by failing to consider the effects of her obesity, find that her impairment met or equal a listing, and properly evaluate her RFC. Bess also contends that additional evidence she submitted to this Court requires remand under sentence six of 42 U.S.C. § 405(g).

Considering the record before the ALJ, Bess's appeal does not present a clear case that this Court should award benefits as she requests, Pl. Br. 14. The ALJ's determination that Bess's impairments do not meet or equal a listing is well supported by the lack of relevant objective findings; specifically, there was no indication that Bess suffered from compromise of a nerve root or the spinal cord, findings necessary to meet the first prong of Listing 1.04, which concerns disorders of the spine. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A. The record that was before the ALJ also fails to establish the equivalent of this listing. If I agreed with Bess's other arguments concerning the ALJ's evaluation of her obesity and RFC, I would order remand rather than an award of benefits. *See Gray v. Colvin*, --- F. Supp. 2d ---, 2014 WL 4272767, at *3 (E.D.N.C. Aug. 29, 2014). When remand is warranted under sentence six, a court does not rule on the correctness of the administrative decision below. *See Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (Kiser, J.) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)). Because I find that remand is appropriate to consider the new evidence that Bess submitted with her appeal, I do not address her other arguments, but leave them to the Commissioner to revisit on remand.

A.    *Additional Evidence*

Sentence six of 42 U.S.C. § 405(g) allows a court to remand for consideration of additional evidence if the evidence is new, material, and good cause exists for its late submission. 42 U.S.C. § 405(g). "Evidence is 'new' if it is not duplicative or cumulative, and is

5

material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (en banc)). The claimant must show good cause for his or her failure to submit the evidence when the claim was before the Commissioner and "must present the remanding court at least a general showing of the nature of the new evidence." *Owens v. Astrue*, No. 7:09cv263, 2010 WL 3743647, at *4 (W.D. Va. Sept. 22, 2010) (citing *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985)). Courts may not attempt to weigh the new evidence or resolve conflicts with existing evidence; if the new evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports," then it is conceivable that the ALJ would have reached a different result upon considering it, and the court must remand. *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).

Bess submits three records for the first time to this Court. Pl. Br. Exs. 1–3. The first is an MRI of Bess's lumbar spine from October 9, 2013. Pl. Br. Ex. 1. The MRI was taken in response to Bess's complaints of low back pain radiating down her legs bilaterally with numbness and tingling in her feet. *Id.* at 1. The scan found postsurgical changes, mild multilevel lumbar spondylosis, mild right foraminal stenosis at L4-L5, and "enhancing scar tissue associated with broad-based left far lateral disc protrusion contacting the exiting nerve root" at L4-L5. *Id.* at 2. The reviewing physician commented that the findings were "not significantly changed" from a MRI taken on December 7, 2012; however, that MRI found only mild to moderate stenosis from the scar tissue, not nerve root contact. *See id.*; R. 1044. In fact, no previous diagnostic study has revealed evidence of nerve root contact. *See* R. 551–53 (myleogram and CT scan on January 22,

Case 5:13-cv-00108-MFU-JCH   Document 24   Filed 01/30/15   Page 6 of 14   Pageid#: 1194

2009), 679 (MRI on August 31, 2010), 871 (MRI on December 9, 2011), 1001 (myleogram and CT scan on March 3, 2012), 1017 (MRI on April 22, 2012), 1040 (MRI on September 7, 2012).

The second record is a medical-source statement completed by Dr. Victor C. Lee, M.D., and dated November 22, 2013. Pl. Br. Ex. 2. Dr. Lee works at the Augusta Health Pain Management Clinic. R. 544. Bess went to the clinic first in 2003, *id.*, again from 2005 through 2006, *id.*, and regularly from July 23, 2009, onward, *see* R. 518–56, 731–36, 857–88, 923–25, 994, 1049–56. In his statement, Dr. Lee identifies the requirements to meet Listing 1.04 and addresses each with either a checkbox or short-answer question. *See* Pl. Br. Ex. 2; 20 C.F.R. pt. 404, subpt. P, app. 1. Dr. Lee opined that Bess has spondylolisthesis[2] with evidence of nerve root compression, neuro-anatomic distribution of numbness, and decreased spinal range of motion. Pl. Br. Ex. 2, at 1. He was unable to evaluate her muscle strength or possible motor loss because she could not perform the motions, but stated that her strength "has to be [at] least 3+/5 for ambulation." *Id.* Bess had decreased sensation to pinprick in her L5 dermatome, but did not have a positive straight leg raise test while sitting or supine. *Id.* at 2. In conclusion, Dr. Lee opined that Bess's impairment was medically equivalent to Listing 1.04, citing to Bess's spondylolisthesis, mild dextroscoliosis, prior L4-L5 surgery, and disk protrusion and scar tissue contacting her nerve root. *Id.*

The final record is a lumbar spine RFC questionnaire, also completed by Dr. Lee and dated November 22, 2013. Pl. Br. Ex. 3. He stated that Bess has sharp lower back pain and lower extremity numbness, fatigue, and spasms, which make her unsteady and force her to ambulate with a walker. *Id.* at 1. He indicated that she has decreased lumbar range of motion, abnormal

---

[2] Dr. Lee also notes that, according to X-rays taken on September 20, 2013, Bess's spondylolisthesis moves on extension and flexion. Pl. Br. Ex. 2, at 1. These X-rays are not in the record and were not submitted with Bess's brief.

7

gait, sensory loss, tenderness, muscle weakness, weight change, and impaired sleep, but negative

straight leg raise tests for both legs. *Id.* at 2. He stated that her impairments have lasted at least

twelve months and can be expected to interfere constantly with her attention and concentration.

*Id.* He opined that Bess cannot walk a city block without stopping, can sit for 10 to 15 minutes at

a time, stand for 5 minutes at a time, and sit, stand, and walk less than two hours in an eight-hour

work day. *Id.* at 2–3. Bess requires an assistive device to stand and must walk for 5 minutes

every 20 to 30 minutes, take a 5 to 10 minute break every 20 to 30 minutes, and be able to shift

from sitting to standing at will. *Id.* at 3–4. She can only rarely lift or carry, and never more than

10 pounds. *Id.* at 4. She can rarely twist and stoop and never crouch, squat, or climb ladders or

stairs. Finally, Dr. Lee opined that Bess's impairments are likely to lead to her missing more than

four days of work per month. *Id.* In support of his findings, Dr. Lee cited to the October 9, 2013,

MRI and flexion and extension X-rays taken in September 2013.[3] *Id.* at 1.

All three records Bess submitted are new. The MRI was taken forty days after the ALJ's

decision, but nonetheless relates back to the relevant period. The most recent X-ray in the record

was taken six months earlier, R. 1048 (April 4, 2013), and the most recent MRI was taken ten

months earlier, R. 1044 (December 7, 2012). The April 2013 X-ray showed an anterolisthesis at

L4-L5 that was new since the December 2012 examination. R. 1048. This Court cannot interpret

these diagnostics, but they do suggest that Bess's lumbar spine had at least some continuing

changes during the relevant period. R. 1048. After the ALJ's decision, Bess complained of

increased symptoms following a fall in late September 2013. Pl. Br. Ex. 1, at 1. Again, it is not

this Court's role to assess whether the nerve root contact found on the MRI was caused by the

fall or had already developed as part of other degenerative changes. The MRI presents markedly

---

[3] *See infra* note 2.

changed diagnostic imaging of Bess's lumbar spine forty days after the ALJ's decision. It is neither cumulative nor duplicative, is associated with Bess's fundamental impairment, and is sufficiently contemporaneous with the ALJ's decision to relate back to the relevant period. *See Reamey v. Astrue*, No. 6:08cv21, 2009 WL 1619211 at \*4 (W.D. Va. June 8, 2009) (Urbanski, M.J.) (finding surgical records from three months after the ALJ's opinion that demonstrated past nerve root compression related back to the claimant's back issue).

Concerning Dr. Lee, the record contains a previous functional assessment that he gave on November 1, 2011. R. 862–69. The statements Bess submitted are new and not cumulative because they are based upon different and more recent evidence—Dr. Lee's ongoing treating relationship with Bess and diagnostic findings that did not exist at the time of his earlier statement. Moreover, one of the two reasons the ALJ gave for discrediting Dr. Lee's November 2011 opinion—that it preceded the September 2012 surgery that the medical expert opined ameliorated Bess's back condition—does not apply to his new opinions. R. 20, 64. There is good cause why Bess did not submit these records earlier, as the MRI was taken two days before the Appeals Council's decision and Dr. Lee gave his statements a month after the MRI.[4] Bess has also demonstrated the nature of the records by submitting them to this Court.

---

[4] The Commissioner argues that, to demonstrate good cause, a claimant must provide an "affirmative reason" for not previously submitting evidence beyond arguing "solely that such evidence was not in existence at the time of the proceedings before the ALJ." Def. Br. 22 (citing *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th. Cir 1984)). The cases the Commissioner cites, which are not binding on this Court, do not support her argument. *Perkins* and *Sample* both dealt with physician opinions written after the ALJ's decision but based entirely on evidence in the record before the ALJ. *Perkins*, 107 F.3d at 1296; *Sample*, 999 F.2d at 1144. The Seventh Circuit found that these opinions were not new because they were based on evidence already under consideration, and there was no good cause for their late submission because the claimant could have had the physicians give the same evaluations earlier. *Perkins*, 107 F.3d at 1296; *Sample*, 999 F.2d at 1144. These cases hold only that a remand cannot be based upon a new opinion of old evidence. In *Willis*, the Sixth Circuit denied

9

Furthermore, the records are material—they provide objective and treating-source opinion evidence that contradicts medical records central to the ALJ's listing analysis and RFC determination. *See Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (evidence is material if it fills an "evidentiary gap [that] played a role in [the ALJ's] decision to deny benefits"); *Dunn*, 973 F. Supp. 2d at 650 (evidence is material if it "calls into doubt any decision grounded in the prior medical records"). The ALJ found that Bess's impairments did not meet or equal a listing under the regulations based on the medical expert's testimony, the state Disability Determination Service ("DDS") examiners' assessments, and because "[n]o treating or examining physician has identified medical signs or findings that meet or medically equal" a listing. R. 16. Evidence that a disc protrusion contacts the nerve root is directly material to the first prong of Listing 1.04. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A. The October MRI is the first and only diagnostic finding of nerve root contact and calls into doubt the ALJ's conclusions based upon the prior medical records. *See Hamm v. Colvin*, No. 4:13cv59 slip op. at 10–11 (W.D. Va. Dec. 23, 2014) (Hoppe, M.J.) (finding an MRI material despite its generally mild findings when it found degeneration in the cervical spine for the first time), *adopted by* 2015 WL 225408 (Jan. 16,

---

remand for lack of good cause when the claimant submitted a psychiatric evaluation she underwent two days after the ALJ's decision. 727 F.2d at 553–54. Again, there was no reason why she could not have had the evaluation completed in time for the ALJ to consider it. *Id.* at 554.

This case is distinguishable. The October 9, 2013, MRI is new objective evidence created in the regular course of Bess's treatment, rather than a consultative opinion prepared to aid her disability claim. Its findings represent Bess's contemporaneous condition and provide material information about her impairment during the relevant period. Dr. Lee's opinions are based in part upon the new MRI and do not rely only on evidence already before the ALJ. Even if the cases cited by the Commissioner were controlling precedent, the evidence Bess submitted is different from the kind they discussed. Bess has done everything necessary to meet the good cause requirement. *See Norwood v. Astrue*, No. 6:07cv23, 2008 WL 4130854, at *4 (W.D. Va. Aug. 27, 2008) (Urbanski, M.J.) (finding good cause for failure to submit evidence earlier when the claimant did not receive it until three weeks after the Appeals Council's decision), *adopted by* 2008 WL 4200054 (Sept. 12, 2008).

2015). The MRI and Dr. Lee's opinions also undermine the ALJ's statement that no physician has identified findings that meet or equal a listing.[5] *See Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (ordering remand where new evidence was "directly material to the final prong of Listing 12.05C" and "contradict[ed] both the ALJ's findings and underlying reasoning"); *Wade v. Colvin*, 7:12cv 621, 2013 WL 4520273, at *6 (W.D. Va. Aug. 26, 2013) (reversing and remanding in part because an examining physician's new opinion conflicted with another physician's opinion that the ALJ credited in his decision). Furthermore, both of Dr. Lee's statements contradict the medical expert and DDS examiners' opinions and are based, in part, on new objective evidence. This Court may not weigh new evidence or resolve conflicting opinions. *Dunn*, 973 F. Supp. at 642. The MRI and Dr. Lee's statements are material to the ALJ's listing determination and should be considered by the ALJ in light of the rest of the record. *Id.*

Similarly, the new evidence challenges the reasoning behind the ALJ's RFC determination. The ALJ's conclusions are based in large part upon an examination by Dr. Francis Shen on April 4, 2013. *See* R. 1046–47. Dr. Shen performed a physical examination and reviewed updated X-rays of Bess's lumbar spine. R. 1046–48. He found that Bess could heel walk, toe walk, and ambulate without aids. R. 1046. She had full strength and reflexes in her extremities and intact sensation to light touch "except for some subjective decreased sensation and lateral aspect of the right knee." *Id.* She had negative clonus, Hoffmann sign, and straight leg raise test while seated and supine. *Id.* The X-ray showed lumbar degenerative disc disease and

---

[5] Dr. Lee's conclusion that Bess's impairments are medically equivalent to Listing 1.04 does not deserve any special weight because listing equivalency is a determinative issue "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(1); *see also* SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996); *Huff v. Astrue*, No. 6:09cv42, 2010 WL 5296842, at *5 (W.D. Va. Nov. 22, 2010). Nevertheless, Dr. Lee's findings regarding elements of the listing—such as nerve root contact, limited range of motion, and decreased sensation—are medical signs and opinions from a treating physician and must be weighed accordingly by the ALJ.

11

spondylolisthesis at L4-L5. R. 1047–48. Dr. Shen advised that "surgical intervention is inconsistent for the management of degenerative disk disease" and suggested that Bess use anti-inflammatories and pursue physical therapy. R. 1047

Dr. Shen's treatment note was the most recent physician examination in the record before the ALJ. He relied upon it to find that Bess could ambulate without assistance, discount the credibility of her allegations of disabling symptoms and limitations, and conclude that, "although the evidence shows that the claimant required three different surgical procedures to her cervical and lumbar spines, they were for different conditions/injuries and she fully recovered from each surgical procedure." R. 19. The medical expert who testified at Bess's second administrative hearing, Dr. Erwin, also relied heavily on Dr. Shen's examination to support his testimony. *See* R. 64–65 (opinion evidence and surgery effectiveness), 65 (ambulatory ability), 66 (effect of obesity). The ALJ, in turn, gave Dr. Erwin's testimony significant weight and gave little weight to the November 2011 opinion of Dr. Lee "for the reasons stated by Dr. Erwin." R. 20.

The new evidence Bess submitted contradicts Dr. Shen's treatment note. The October MRI, with its evidence of nerve root contact, presents more severe diagnostic findings than the April X-rays. While Dr. Shen's physical examination was largely unremarkable, Dr. Lee found that Bess had impaired strength in her lower extremities, had decreased sensation in her L5 dermatome, and was unable to ambulate without an assistive device. Pl. Br. Ex. 2, at 1; Pl. Br. Ex. 3, at 3. The ALJ and Dr. Erwin depended on how recent and generally mild Dr. Shen's findings were to conclude that Bess's third surgery had adequately addressed her impairments. The MRI and Dr. Lee's statements present contradictory evidence and create a material conflict beyond the purview of this Court to resolve. Weighing the new evidence in light of the entire

record and resolving conflicts between physicians' opinions is the proper duty of the

Commissioner. *See Meyer*, 662 F.3d at 706–07; *Dunn*, 973 F. Supp. 2d at 642.

## IV. Conclusion

For the foregoing reasons, I find that remand for consideration of new evidence is

appropriate. Therefore, I recommend that this Court **GRANT IN PART** Bess's Motion for

Summary Judgment, ECF No. 19, **DENY** the Commissioner's Motion for Summary Judgment,

ECF No. 21, and **REMAND** this case for further administrative proceedings under the sixth

sentence of 42 U.S.C. § 405(g).[6]

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and
> Recommendation], any party may serve and file written objections to such
> proposed findings and recommendations as provided by rules of court. A judge of
> the court shall make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection is made. A
> judge of the court may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge may also receive
> further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations

within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is

directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States

District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel

of record.

---

[6] Pursuant to a sentence six remand, the Court shall retain jurisdiction in this matter pending the
Commissioner's determination on remand and further action by either party. *See Wilson v.
Colvin*, No. 7:13cv113, 2014 WL 2040108, at *5 (W. D. Va. May 16, 2014).

ENTER: January 30, 2015

Joel C. Hoppe
United States Magistrate Judge

14